UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYLA MARIE WIKTORSKI, <br><br>  Plaintiff, <br><br>  v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>  Defendant. | No. 2:16-cv-0364-KJN <br><br><br> <u>ORDER</u> |

Plaintiff Kayla Marie Wiktorski seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from July 15, 2001, her alleged disability onset date, through the date of the final administrative decision.  (ECF No. 17.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 18.)  No optional reply brief was filed.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 9.)

1

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.     BACKGROUND

Plaintiff was born on March 24, 1979, has a tenth grade education, can communicate in English, and previously worked as a janitor and telemarketer. (Administrative Transcript ("AT") 31, 44, 79-80, 258, 260.)[2] On December 16, 2011, and December 31, 2011, plaintiff applied for DIB and SSI, respectively, alleging that her disability began on July 15, 2001, and that she was disabled primarily due to migraines and anxiety. (AT 22, 228, 230-36, 237-43, 259.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on December 19, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 22, 40-75.) The ALJ subsequently issued a decision dated August 15, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from July 15, 2001, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 22-33.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 22, 2015. (AT 1-7.) Plaintiff then filed this action in federal district court on February 18, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED

On appeal, plaintiff raises the sole issue of whether the ALJ improperly evaluated the opinion of plaintiff's treating physician.

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ determined that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

met the insured status requirements of the Act for purposes of DIB through September 1, 2002. (AT 25.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since July 15, 2001, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: anxiety, headaches, right wrist tendonitis, mild scoliosis, and lumbar spine degenerative disc disease. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is able to lift/carry 10 pounds occasionally and frequently; stand/walk for two hours in an eight-hour day; sit for six hours in an eight-hour day with the option to stand up every 30 minutes for 1-2 minutes at the work station to stretch and can occasionally climb ramps/stairs, stoop, balance, crouch, crawl and kneel and frequently handle, finger and feel with the bilateral upper extremities. She is to do no climbing of ladders, ropes and scaffolds and is to avoid concentrated exposure to noise. She can do simple repetitive tasks in a low stress job environment that requires only simple work related decisions with few if any workplace changes and no fast-paced production rate work.

(AT 27.)

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 31.) However, at step five, the ALJ found that, in light of plaintiff's age, education,

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

work experience, and RFC, and based on the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 31-32.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from July 15, 2001, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 33.)

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

As noted above, plaintiff's sole contention before this court is that the ALJ improperly evaluated the opinion of plaintiff's treating physician, Dr. Russell Paul Miller. For the reasons discussed below, that argument is unpersuasive.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[4] except that the ALJ in any

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Miller was plaintiff's treating primary care provider.  On September 21, 2011, plaintiff requested Dr. Miller to provide a work exemption based on her claim of constant headaches.  Dr. Miller performed a physical examination, and noted:

> I suspect that this [anxiety] is the more fundamental issue and that patient has a borderline personality disorder that is the real etiology of her being unable to function in a work environment.  Will OK work exemption for now, but may require a psychiatry evaluation down the road.

(AT 645.)  Thereafter, on December 19, 2012, plaintiff again requested Dr. Miller to "certify her inability to work based on her asthma, migraines, tendonitis and anxiety." (AT 825.)  After performing a physical examination, Dr. Miller observed:

> I explained to patient that while I believe she is disabled, I am not able to certify that on the basis of her asthma, migraines or tendonitis.  None of those should be totally disabling.  On the other hand, generalized anxiety disorder, and possibly other psychiatric diagnoses as well, probably render her unable to work.  Urged her to follow up with her psychiatrist, and she promises to do so in the very near future.

(AT 827.)

Although the ALJ credited Dr. Miller's assessment of plaintiff's physical impairments, he justifiably gave little weight to Dr. Miller's comments about plaintiff's mental impairments.  (AT 29.)  Even though an ALJ cannot reject the opinion of a treating physician regarding a mental health impairment solely because the physician is not a mental health professional, the ALJ here correctly noted at the hearing that Dr. Miller's general comments were unsupported by regular mental status examinations or other detailed clinical findings in his treatment notes.  (AT 63-64.)  Indeed, the comments do not even impose any specific mental limitations.  As such, the opinion is conclusory and minimally supported, and the ALJ permissibly gave it little weight.  Moreover, given the tentative language employed by Dr. Miller, as well as his recommendation that plaintiff

follow up with a mental health professional, it was rational for the ALJ to conclude that Dr. Miller did not even intend to give definitive diagnoses and opinions concerning plaintiff's mental impairments, but instead recommended further evaluation by a specialist.[5] (AT 29.)

Furthermore, the ALJ reasonably relied on the opinion of the consultative examining psychologist, Dr. Travis Owens, who personally examined plaintiff on October 9, 2012. (AT 29-30, 760-65.) After performing a detailed mental status examination, Dr. Owens diagnosed plaintiff with generalized anxiety disorder, obsessive compulsive disorder, and a provisional diagnosis of post traumatic stress disorder. (AT 764-65.) He opined that plaintiff was mildly impaired in her ability to understand, remember, and carry out simple instructions, as well as maintain persistence and pace. (AT 764.) Plaintiff was mildly to moderately impaired in her ability to understand, remember, and carry out complex instructions; respond appropriately to coworkers, supervisors, and the public; and maintain attention and concentration. (Id.) He further opined that plaintiff was moderately impaired in her ability to respond appropriately to usual work situations (attendance and safety) and deal with changes in a routine work setting. (Id.) Because Dr. Owens's opinion was based on independent clinical findings made in the course of a personal examination, it constitutes substantial evidence on which the ALJ was entitled to rely. Moreover, in light of the fact that Dr. Owens is a mental health specialist, and his opinion was detailed and well supported, the ALJ reasonably gave it great weight. It is also generally consistent with the contemporaneous August 2012 assessment of plaintiff's treating therapist and licensed clinical social worker, Marine Green, who noted an anxious mood, but otherwise largely normal mental findings, and assessed a GAF of 51-60, which is indicative of moderate symptoms. (AT 773-75.)

Finally, the ALJ also permissibly relied on the opinions of the state agency mental providers. (AT 30-31.) On October 11, 2012, state agency psychologist Dr. Adrianne Gallucci reviewed plaintiff's records, assessed no more than moderate mental limitations, and opined that:

---

[5] Even though plaintiff correctly notes that the ALJ's decision only expressly discussed Dr. Miller's December 2012 treatment note, Dr. Miller's September 2011 treatment note suffers from the same concerns discussed with respect to the December 2012 treatment note. Therefore, any error in not explicitly discussing the September 2011 treatment note was harmless.

7

> Claimant is able to carry out instructions, maintain attention for 2-hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods…Claimant is able to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes…Claimant is able to respond appropriately to changes in a routine work setting and be aware of normal hazards and take appropriate precautions.

(AT 106-08.)  Thereafter, on March 6, 2013, state agency psychiatrist Dr. Kevin Gregg reviewed plaintiff's records and affirmed Dr. Gallucci's assessment.  (AT 142.)

Consequently, the ALJ's RFC for a reduced range of sedentary work (with significant mental restrictions related to complexity of work, change, stress, and pacing) is well supported by the opinions of the consultative examining psychologist, the state agency mental providers, and plaintiff's treatment records.  To the extent that treating physician Dr. Miller even expressed a definite opinion concerning plaintiff's mental impairments, the ALJ provided specific and legitimate reasons to discount that opinion.

V.   **CONCLUSION**

In sum, the court finds that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  February 1, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE